# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 13-1853

RANDY L. PEDERSON, APPELLANT,

V.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided February 13, 2015)

*Sean A. Raven*, of Washington, D.C., was on the brief for the appellant.

*Tammy L. Kennedy*, Acting General Counsel; *Mary Ann Flynn*, Assistant General Counsel; and *Ronen Morris*, Acting Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, *Chief Judge*, and HAGEL, MOORMAN, LANCE, DAVIS, SCHOELEN, PIETSCH, and GREENBERG, *Judges*.[1]

MOORMAN, *Judge*, filed the opinion of the Court. LANCE, *Judge*, filed a concurring opinion in which HAGEL, *Judge*, joined. PIETSCH, *Judge*, filed an opinion concurring in the result. KASOLD, *Chief Judge*, filed an opinion dissenting in part in which PIETSCH, *Judge*, joined. SCHOELEN, *Judge*, and GREENBERG, *Judge*, filed opinions dissenting in part.

MOORMAN, *Judge*: The appellant, Randy L. Pederson, appeals through counsel a February 26, 2013, Board of Veterans' Appeals (Board) decision that denied entitlement to (1) a disability rating in excess of 20% for his service-connected right knee disability; (2) a disability rating in excess of 20% for his service-connected left knee disability; and (3) a total disability rating based on individual unemployability (TDIU). Record (R.) at 3-31. This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. § 7252(a). On August 22, 2014, this case was submitted for en banc review, and the Court directed the parties to file supplemental memoranda of law. The Court issues this opinion to clarify the reach of the holdings

---

[1] Judge Bartley recused herself from this matter.

in *Cacciola v. Gibson*, 27 Vet.App. 45 (2014), regarding the effect of the abandonment of a claim or issue appealed to this Court. For the reasons that follow, the Court concludes that (1) the appellant has knowingly abandoned the issues of entitlement to disability ratings in excess of 20% for his service-connected right knee and left knee conditions and (2) the Court has jurisdiction and the authority to review the merits of the abandoned issues. However, for prudential reasons, we will decline to review the merits of the abandoned issues and , therefore, we will dismiss the appeal from the Board's denial of the increased rating claims. The Court will affirm the Board's denial of TDIU.

## I. BACKGROUND

Mr. Pederson served honorably on active duty in the U.S. Army from May 1980 to May 1981. R. at 524. In June 1983, Mr. Pederson was awarded service connection for chondromalacia of the bilateral knees; each knee was rated 10% disabling, effective the date of his separation from service. R. at 1862-66. As of February 1999, each knee was separately rated 20% disabling. R. at 1689-99. Prior to entering service, Mr. Pederson achieved a high school education and worked at a grocery store. R. at 1845, 2014. After service, Mr. Pederson returned to his grocery store position until 1984. R. at 1845. He was employed as a custodial laborer by the U.S. Postal Service (USPS) from November 1985 to November 2001. R. at 1099, 1390-92.

Mr. Pederson underwent a VA compensation and pension (C&P) examination in May 1999. R. at 1748-50. The examiner noted that Mr. Pederson was employed at USPS and that he reported that his position involved relatively long periods of walking, occasionally outside; driving snow removal equipment; and sometimes functioning as a part-time security guard. R. at 1748. Mr. Pederson reported that he had lost, at most, four days of work that year as a result of medical appointments for his knees or because of "significant pain that prevents him from completing the day[']s work." *Id*. The examiner noted that the "[e]xtent of initial knee injury during military service is unknown to this examiner. Most of [the] veteran's current bilateral knee symptoms are due to progressive degenerative changes from aging and obesity." R. at 1750.

In December 2000, Mr. Pederson was examined by Dr. Clayton Van Balen for USPS. R. at 892. Dr. Van Balen noted that Mr. Pederson's medical history included a cardiac valve replacement, degenerative joint disease of his ankles and feet, morbid obesity, insulin dependent diabetes, and

hyperlipidemia. *Id.* Upon physical examination, Dr. Van Balen noted morbid obesity, severe pain in the feet and ankles, and limited ability to stand and walk. *Id.* Dr. Van Balen suggested job accommodations to include no squatting or climbing, alternating standing and sitting as tolerated, no lifting more than 20 pounds, and no walking long distances. *Id.* In February 2001, Dr. Van Balen also recommended that Mr. Pederson not work at night because of his diabetes, that he avoid uneven surfaces due to his arthritis, and that he limit his outdoor exposure to no more than 30 minutes when the temperature is below 32 degrees. R. at 362-63, 885-86.

During a January 2001 VA followup medical examination for diabetes mellitus, the examiner noted that Mr. Pederson had "several limitations in his job because of his [degenerative disc disease] and diabetes" and that he was thinking of applying for total disability. R. at 1582. The examiner noted that, although Mr. Pederson's job at USPS might not be suitable for him, he did not feel Mr. Pederson was eligible for total disability "as he may be eligible for many other jobs." *Id.*

In April 2001, Mr. Pederson was examined by Dr. Bryce Robinson in connection with his disability claim with USPS. R. at 372. Dr. Robinson noted Mr. Pederson's history of cardiac valve replacement, degenerative joint disease with chondromalacia of his right and left knees, morbid obesity, insulin-dependent diabetes, and peripheral neuropathy of the hands and feet. *Id.* He stated that he agreed with the work restrictions recommended by Dr. Van Balen. *Id.* Dr. Robinson opined that Mr. Pederson's medical conditions were "stable, but as the years go on, his degenerative changes in the knees and neuropathy secondary to the diabetes will not improve." *Id.* In June 2001, Mr. Pederson was examined by Dr. John Prevo in connection with his USPS disability retirement claim. R. at 343. Dr. Prevo noted that Mr. Pederson suffered from degenerative joint disease of the spine and lower extremities. *Id.* He opined that Mr. Pederson was disabled and could no longer perform his job as a custodian, with or without accommodations. *Id.* Mr. Pederson's disability retirement from USPS was approved in August 2001. R. at 911-14.

Mr. Pederson submitted a request to VA for TDIU in March 2002. R. at 1390-92. He underwent a VA C&P examination in April 2002. R. at 1375-82. Mr. Pederson reported that he had lost over one month of work because of pain and inability to walk and that he had lost his job with USPS and remained unemployed. R. at 1376. The regional office (RO) denied TDIU in February 2004. R. at 1083-87. The RO found that Mr. Pederson did not meet the schedular requirements for

TDIU pursuant to 38 C.F.R. § 4.16(a), and that referral for an extraschedular rating was not warranted because the evidence failed to show that Mr. Pederson was unemployable as a result of service-connected disabilities. R. at 1086. Mr. Pederson appealed that decision (R. at 1077-78) and in February 2006, the Board remanded his request for TDIU as inextricably intertwined with his pending claim for an increased rating for his service-connected knee disabilities (R. at 852-57).

Mr. Pederson underwent a VA C&P examination in January 2007. R. at 826-30. The examiner opined that Mr. Pederson's bilateral knee disability and his non-service-connected diabetic neuropathy "both have a moderate effect on his activities of daily living and his ability to work as a maintenance person"; that his knee condition "affects his ability to kneel down, climb ladders, or stand for more than 30 minutes"; and that his "diabetic neuropathy also has an effect on his ability to stand for a long time or climb ladders." R. at 830. The RO issued a Supplemental Statement of the Case in March 2007, continuing the denial of Mr. Pederson's request for TDIU. R. at 767-70.

The Board issued a decision in August 2007 denying Mr. Pederson's claims for entitlement to increased ratings for his bilateral knee condition and his request for TDIU. R. at 717-44. Mr. Pederson appealed that decision to this Court and, pursuant to a joint motion for remand, the Court remanded Mr. Pederson's claims for further development, including to obtain Mr. Pederson's Social Security Administration records and for the Board to consider whether a new VA examination should be ordered and whether the evidence necessitated a social and industrial survey. R. at 214-19, 681.

Mr. Pederson was afforded another VA C&P examination in September 2008. R. at 251-56. Regarding employability, the examiner opined that Mr. Pederson "has obvious deconditioning due to his morbid obesity" and, "[r]egarding his knees, it may be a problem performing heavy labor, climbing ladders, [and] going up and down stairs." R. at 255-56. "Regarding his non-service[-] connected issues of diabetes, [hypertension], hyperlipidemia, previous alcohol abuse, mild peripheral neuropathy in the feet, [they] would not have any effect on overall employment." R. at 255-56. The examiner concluded that "[a] sedentary job would be acceptable" and that Mr. Pederson "does not have any medical issue that would preclude him from all substantially gainful employment." *Id.* The RO issued a rating decision in October 2008 denying entitlement to increased ratings for Mr. Pederson's bilateral knee disabilities and TDIU. R. at 2063-71.

4

In May 2012, Mr. Pederson underwent another VA C&P examination. R. at 66-80. The examiner noted the job limitations that had been placed on Mr. Pederson when he was employed at USPS, but also that Mr. Pederson reported that he was able to stand for 5 to 10 minutes at a time and was able to walk short distances, and that he had no limitations on driving or sitting. R. at 79-80. Accordingly, the examiner concluded: "Noting that driving and sedentary activities are without difficulty, this would likely not preclude [him] from all types of gainful employment." R. at 80.

On appeal to the Board, Mr. Pederson argued that his request should be referred to the Director of Compensation Service (Director) for consideration of TDIU on an extraschedular basis. R. at 40-42. He argued that, because he has only worked in labor-intensive positions at a grocery store and for USPS and only has a high school education, he lacks the requisite educational or occupational experience to qualify for any sedentary employment. *Id*. In the February 26, 2013, decision here on appeal, the Board denied entitlement to increased disability ratings for Mr. Pederson's service-connected right and left knee disabilities and for TDIU. R. at 3-32. This appeal followed.

## II. ANALYSIS

### *A. Increased-Ratings Claims*

In his opening brief, the appellant expressly limited his arguments to the Board's denial of entitlement to TDIU. The Secretary argued in his brief that the appellant's claims for increased disability ratings for his service-connected right and left knee disabilities should be deemed abandoned. Secretary's Brief at 22. In *Cacciola*, the Court noted that, "when an appellant expressly abandons an issue in his initial brief or fails to present any challenge and argument regarding an issue, the abandoned issue generally is not reviewed by the Court." 27 Vet.App. at 48.

The Court referred Mr. Pederson's case to the en banc Court to consider whether, in light of *Cacciola*, an appellant's abandonment of some issues decided by the Board may, under certain circumstances, be deemed a concession by the appellant that the Board decision contains no error as to those issues. To assist the Court in the resolution of that issue, the Court ordered supplemental memoranda to address the following questions:

5

(1) When an appellant presents no argument regarding or expressly abandons issues on appeal prior to or concomitant with submission of his or her brief, does the Court have the authority to affirm the Board decision on the basis that the issues not argued by the appellant were conceded, or must the Court decline review of the Board's determination on the issues and dismiss the appeal as to those issues?

(2) If the Court does have the authority to affirm the Board decision on the basis that the issues not argued by the appellant were conceded, under what circumstances should the Court exercise that authority? Do the circumstances differ if the appellant specifically asserts that he or she only wants to appeal one determination rendered by the Board in its issued decision?

. . . .

[3] [W]hether the appellant's statement that he is appealing only the Board's TDIU determination constitutes a waiver of the right to judicial review of the Board's decision on the other matters decided by the Board[;] and

[4] [W]hether the Court lacks jurisdiction over those matters or has the authority to render a decision on their merits.

*Pederson v. McDonald*, No. 13-1853, 2014 WL 4167846, at * 2-3 (U.S. Vet. App. Aug. 22, 2014) (per curiam order). The parties submitted supplemental memoranda on October 3, 2014. In his supplemental memorandum, the appellant makes clear that it was his intention to abandon the issues of increased disability ratings for his service-connected right and left knee disabilities. Appellant's Supplemental Memorandum (Supp. Mem.) of Law at 8. The appellant explains that, "[b]ecause [his] opening brief expressly limited the scope of review he sought from the Court, he relinquished his right to judicial review of the Board's determinations regarding the proper disability ratings for his service-connected knee disabilities." *Id.* The appellant maintains that, when a claimant "relinquish[es] his right to the Court's review of an issue . . . [,] it necessarily follows that dismissal, not affirmance, is the appropriate disposition for abandoned issues." *Id.* at 1-2. The appellant further asserts that "abandonment of an issue on appeal serves to preclude judicial review of the abandoned issue" and, therefore, "affirmance is inappropriate" and further, "the Court does not possess [the] authority" to affirm the Board decision with respect to the abandoned issues. *Id.* at 3.

In response to the Court's final inquiry, the appellant argues further that the Court, in fact, lacks jurisdiction to render a decision on the merits of a claim or issue that has been expressly

6

abandoned by an appellant. The appellant argues alternatively that, if the Court does have the authority to affirm a Board decision with respect to an abandoned issue, it should do so only in limited circumstances.

The Secretary responds that the Court has the authority to affirm any issue over which it has jurisdiction, to include issues expressly or constructively abandoned on appeal. The Secretary asserts that the filing of a Notice of Appeal (NOA) of a final Board decision places the entire Board decision on appeal and confers upon the Court jurisdiction over all issues finally decided by the Board in that decision. Secretary's Supp. Mem. of Law at 2 (citing *Cacciola*, 27 Vet.App. 45; *Fagre v. Peake*, 22 Vet.App. 188, 191 (2008)). The Secretary further asserts that the abandonment of an issue on appeal has no jurisdictional significance, but that the Court has discretion to decline to exercise its jurisdiction over an abandoned issue when appropriate. *Id*. at 2-3. The Secretary suggests that, when the abandonment is a deliberate relinquishment of the right to further pursue that issue, i.e., a waiver, the waiver amounts to a concession of no error and the Court should affirm the Board's decision as to that issue. *Id.* at 6. When an abandonment is the result of an inadvertent and excusable failure to identify and pursue an issue further, i.e., a forfeiture, the Court should decline to exercise its authority to affirm and should dismiss the forfeited issue. *Id.* The Secretary notes, however, for the purposes of determining whether an abandoned issue might later be subject to a motion for revision on the basis of clear and unmistakable error (CUE), that in his view neither an affirmance nor a dismissal of an abandoned issue would constitute a review on the merits.[2] Accordingly, the Secretary maintains that, in either the case of an affirmance or a dismissal, an appellant may still collaterally attack an abandoned portion of a Board decision on the basis of CUE.

"As the Court has previously made clear, the Court 'has an independent duty to determine its own jurisdiction.'" *Boyd v. McDonald*, 27 Vet.App. 63, 69 (2014) (quoting *Posey v. Shinseki*, 23 Vet.App. 406, 407 (2010)). The appellant suggests in his Supplemental Memorandum of Law that his express abandonment of his increased-rating claims decided by the Board limits this Court's jurisdiction over those issues. Appellant's Supp. Mem. at 9-10. The Court disagrees.

---

[2] A "review on the merits" is the Secretary's interpretation of 38 U.S.C. § 7111, found in 38 C.F.R. §§ 20.1400(b) and 20.1409(c) setting forth the conditions governing revision of Board decisions on the basis of CUE when a request for revision cannot be entertained because there is an intervening Court action affirming the Board decision in which CUE is asserted.

The filing of an NOA of a final Board decision places the entire Board decision on appeal and confers upon the Court jurisdiction over all issues finally decided by the Board. *Cacciola*, 27 Vet.App. at 54-55; *Fagre*, 22 Vet.App. at 191. This Court's jurisdiction is defined by statute, and it is not, contrary to the appellant's arguments, limited or defined by the arguments the appellant makes in his opening brief. *See* 38 U.S.C. § 7252. The Court has "exclusive jurisdiction to review decisions of the Board" and has the "power to affirm, modify, or reverse" any decision of the Board over which it has jurisdiction or to "remand, as appropriate." *Id.; see also* 38 U.S.C. § 7261 (Scope of Review). Under the "broad authority–indeed, mandate–[of section 7261] to carry out comprehensive review of [Board] decisions, the Court undoubtedly would have jurisdiction to consider those same Board errors if raised by the appellant or noted, sua sponte, by the Court itself." *Johnson v. Brown*, 7 Vet.App. 95, 99 (1994). Accordingly, consistent with *Cacciola*, the Court holds that an NOA from a Board decision constitutes an appeal of all issues finally decided in the Board decision. We clarify that the Court retains jurisdiction over all finally decided issues, regardless of whether the NOA itself or the subsequent briefing narrows the issues on appeal.

Although the abandonment of an issue on appeal has no effect on the Court's *jurisdiction*, this Court, like other courts, will generally decline to exercise its *authority* to address an issue not raised by an appellant in his or her opening brief. *See Andre v. Principi*, 301 F.3d 1354, 1363 (Fed. Cir. 2002); *Carbino v. West*, 168 F.3d 32, 34-35 (Fed. Cir. 1999); *Cacciola*, 27 Vet.App. at 48. Just as the Court has discretion to decline to address an issue over which it has jurisdiction when an appellant has raised the issue for the first time on appeal, the Court necessarily has the same discretion to "affirm, modify, or reverse [or] remand" any issue that has been abandoned when appropriate. 38 U.S.C. § 7252; *cf. Maggitt v. West*, 202 F.3d 1370, 1377 (Fed. Cir. 2000) ("While the . . . Court may hear legal arguments raised for the first time with regard to a claim that is properly before the Court, it is not compelled to do so in every instance."); *Carbino*, 168 F.3d at 34-35 ("An improper or late presentation of an issue or argument under the court's rules need not be considered, in fact, *ordinarily* should not be considered." (emphasis added)); *see also Freytag v. Comm'r*, 501 U.S. 868, 879 (1991) ("[T]his is one of those rare cases where we should exercise our discretion to hear petitioners' challenge" raised for the first time on appeal.). As noted by the Secretary, it is a "'jurisprudential rule' that permits the Court to exercise its discretion to decline to exercise its

8

[authority] over an issue over which it otherwise has jurisdiction." Secretary's Supp. Mem. of Law at 2-3. The same jurisprudential rule permits the Court to exercise its discretion and address, on the merits, an issue over which it has jurisdiction but which a party has elected not to address in the appellate brief.

This Court's decision in *Cacciola* illustrates the importance of clarity in the Court's disposition of issues abandoned on appeal. As noted above, although abandoned issues are generally not reviewed by the Court on the merits, the Court nevertheless retains jurisdiction over such issues and has the authority to decide the merits of abandoned issues in an appropriate case. In *Cacciola*, the Court found that "an examination of the [underlying Court] decision reveals that, because the appellant did not present any arguments addressing the Board's denial of an initial compensable disability rating for bilateral hearing loss, the Court deemed the issue abandoned on appeal *and did not address the merits of the Board's decision on this issue*." 27 Vet.App. at 58 (emphasis added). Therefore, the Court determined, the issue was "not decided by the Court" in its underlying decision and, as a result, the Board's decision on the issue could be subject to revision on the basis of CUE. *Id*. The Court in *Cacciola* examined the underlying Court decision to determine whether the issue before the Court being challenged as CUE had been decided previously on the merits. *Id*.

To the extent that *Cacciola* might be mistakenly read to mean that an "abandoned issue" is necessarily an issue that was not reviewed on the merits or that the Court is precluded from reviewing an abandoned issue on the merits, as we stated above, abandonment of an issue on appeal has *no effect* on the Court's *jurisdiction* or *authority* to address an issue not raised by an appellant in his or her opening brief. Accordingly, we reaffirm that the body of the Court's decision in the direct appeal must be examined in any subsequent CUE challenge regarding that issue to determine not simply whether the issue was abandoned but whether the issue was reviewed by the Court on the merits. *See Cacciola*, 27 Vet.App. at 57-58.

The Court in *Cacciola* reviewed the underlying Court decision, as it must, to determine whether the Court exercised its discretion to review the issue on the merits notwithstanding the abandonment. *Id*. at 58. Thus, any suggestion that *Cacciola* could be read as holding that a statement that an issue has been abandoned on appeal necessarily means that the issue was not reviewed on the merits is mistaken. Likewise, to the extent that the appellant reads into *Cacciola*

9

that an abandoned issue *cannot* be reviewed, or *must* be dismissed by the Court, he is mistaken. Certainly, none of these readings of *Cacciola* reflect what the Court in *Cacciola* intended. Indeed, there may be instances where there are cogent reasons for the Court to exercise its jurisdiction over an appealed issue, and consider and render a decision on that issue even if the issue is abandoned by a party.[3]

In this case, the appellant, represented by his attorney, expressly limited his arguments on appeal to the Board's denial of TDIU. In his supplemental memorandum of law, he confirmed that it was his intention to abandon his increased-ratings claims and waive his right to judicial review of those matters. The appellant is represented by counsel, and there is nothing in the record or the pleadings before this Court to indicate that his abandonment is not knowing and intentional.[4] Although we conclude that the Court retains the authority in an appropriate case to address the merits of issues abandoned on appeal, nothing in this case compels the Court to depart from our usual practice of declining to exercise our authority to address the abandoned issues on the merits.[5] *See Andre*, 301 F.3d at 1363. Accordingly, as a matter of the exercise of prudential considerations, we

---

[3] There is a difference, however, between abandonment of an issue on appeal, whether express or implied, and "the situation in which an appellant states that he is appealing the Board's decision on an issue, but then makes no arguments, or insufficient arguments, challenging the Board's determination." *Cacciola*, 27 Vet.App. at 57. As stated by the Court in *Cacciola*, "[i]n such instances, the Court generally affirms the Board's decision as a result of the appellant's failure to plead with particularity the allegation of error and satisfy his burden of persuasion on appeal to show Board error." *Id*. at 57-58; *see also Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (holding that an appellant bears the burden of demonstrating error on appeal), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table).

[4] The Court notes that representation by an attorney is a significant factor in its determination that the appellant's abandonment of these issues and waiver of the right to judicial review was knowing and intentional. *See Janssen v. Principi*, 15 Vet.App. 370, 374 (2001).

[5] The Secretary has expressed his position in his supplemental memorandum of law: "[R]egardless of whether the Board decision on an abandoned issue is affirmed on the basis that the absence of error was conceded or the appeal of that issue is dismissed, a claimant is not foreclosed from subsequently attacking the Board decision on that issue on the basis of CUE." Secretary's Supp. Mem. of Law at 8. Certainly, when a claim has not been reviewed *on the merits* by this Court, the Secretary may interpret his regulation to find that such a claim has not been "decided by" this Court. 38 C.F.R. § 20.1400(b) ("All final Board decisions are subject to revision [on the grounds of CUE] except (1) Decision on issues which have been appealed to and decided by a court of competent jurisdiction."); *see also Cacciola, supra*. The Secretary is reminded that the interpretation of a Court's decision is dictated *by the Court's opinion*, not by the Secretary's interpretation of his regulations. Moreover, the Court cautions the Secretary against relying on blanket rules and select words in the opening or decretal paragraph of a Court's decision to determine whether the Court has actually addressed the merits of a claim or issue.

will not review the merits of the abandoned issues and will dismiss the appeal as to the Board's decision denying increased ratings for the appellant's bilateral knee disabilities.

## B. TDIU

Total disability ratings will be assigned "when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation." 38 C.F.R. § 3.340(a) (2014). A TDIU rating may be assigned to a veteran who meets certain disability percentage thresholds and is "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." 38 C.F.R. § 4.16(a) (2014). If a veteran fails to meet the percentage standards set forth in § 4.16(a) but is "unemployable by reason of service-connected disabilities," the RO should submit the claim to the Director for extraschedular consideration. 38 C.F.R. § 4.16(b).

An award of TDIU does not require a showing of 100% unemployability. *See Roberson v. Principi*, 251 F.3d 1378, 1385 (2001). However, an award of TDIU requires that the claimant show an inability to undertake substantially gainful employment as a result of a service-connected disability or disabilities. 38 C.F.R. § 4.16(b) ("[A]ll veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled."). In determining whether a claimant is unable to secure or follow a substantially gainful occupation, the central inquiry is "whether the veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." *Hatlestad v. Brown*, 5 Vet.App. 524, 529 (1993). When making this determination, VA may not consider non-service-connected disabilities or advancing age. 38 C.F.R. § § 3.341, 4.19 (2014); *see also Van Hoose v. Brown*, 4 Vet.App. 361, 363 (1993).

Unlike the regular disability rating schedule, which is based on the average work-related impairment caused by a disability, "entitlement to TDIU is based on an individual's particular circumstances." *Rice v. Shinseki*, 22 Vet.App. 447, 452 (2009). Therefore, when the Board conducts a TDIU analysis, it must take into account the individual veteran's education, training, and work history. *Hatlestad v. Derwinski*, 1 Vet.App. 164, 168 (1991) (level of education is a factor in deciding employability); *see Friscia v. Brown*, 7 Vet.App. 294, 295-97 (1994) (considering veteran's experience as a pilot, his training in business administration and computer programming, and his

history of obtaining and losing 19 jobs in the previous 18 years); *Beaty v. Brown*, 6 Vet.App. 532, 534 (1994) (considering veteran's eighth-grade education and sole occupation as a farmer); *Moore v. Derwinski*, 1 Vet.App. 356, 357 (1991) (considering veteran's master's degree in education and his part-time work as a tutor).

Whether a claimant is unable to secure or follow substantially gainful employment is a finding of fact that this Court reviews under the "clearly erroneous" standard. 38 U.S.C. § 7261(a)(4); *Bowling v. Principi*, 15 Vet.App. 1, 6 (2001). A finding of fact is clearly erroneous when the Court, after reviewing the entire evidence, "is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948); *see also Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990). As always, the Board must provide a statement of the reasons or bases for its determination, adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. 38 U.S.C. § 7104(d)(1); *see Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert*, 1 Vet.App. at 56-57.

The appellant argues that the Board erred in failing to adequately support its determination that referral to the Director for consideration of TDIU on an extraschedular basis was not required. Specifically, he argues that the Board failed to adequately consider his occupational and educational experience in determining whether his service-connected disabilities preclude him from maintaining substantially gainful employment. The appellant also argues that the Board impermissibly considered the impact of his non-service-connected disabilities in evaluating whether his service-connected disabilities alone preclude him from maintaining substantially gainful employment.

The Court is not persuaded by the appellant's arguments. Although the appellant is correct that VA must consider a claimant's educational and occupational history when determining whether his or her service-connected disabilities preclude maintaining substantially gainful employment, the Court finds, in the context of this claim, that the Board's reasons and bases are sufficient. The Board's determination that referral for an extraschedular rating is not warranted is based upon many factors. The Board found that, although the evidence clearly demonstrates that the appellant's disabilities limit his ability to work, the evidence does not demonstrate that his service-connected knee disabilities *alone* are of sufficient severity to produce unemployability. R. at 27. In addition, the Board found that the evidence clearly demonstrates that the appellant is physically able to

12

perform sedentary work. R. at 26-27. Although the appellant disputes whether his employment and educational background allow him to qualify for sedentary work, the appellant does not argue that he is physically or mentally unable to perform sedentary work. The Board addressed the appellant's argument that his high school education and history of labor-intensive jobs preclude him from obtaining a sedentary position. The Board concluded that "while the [v]eteran's education and work experience may limit his employment opportunities, it does not seem that the lack of a college degree would preclude the [v]eteran from *all* sedentary employment." R. at 26.

The appellant does not challenge the Board's finding that his service-connected knee disabilities do not preclude sedentary activities, or its finding that VA satisfied its duty to assist (including with respect to the provision of a vocational assessment), and has not pointed to any evidence in the record of proceedings demonstrating that his level of education and his past employment experience categorically preclude him from sedentary employment that would provide more than marginal income. *See* 38 U.S.C. § 5107(a) ("[A] claimant has the responsibility to present and support a claim for benefits. . . ."); *Fagen v. Shinseki*, 573 F.3d 1282, 1286 (Fed. Cir. 2009) (stating that the claimant has the burden to "present and support a claim for benefits" and noting that the benefit of the doubt standard in section 5107(b) is not applicable based on pure speculation or remote possibility); *Skoczen v. Shinseki*, 564 F.3d 1319, 1323-29 (Fed. Cir. 2009) (interpreting section 5107(a) to obligate a claimant to provide an evidentiary basis for his or her benefits claim, consistent with VA's duty to assist, and recognizing that "[w]hether submitted by the claimant or VA . . . the evidence must rise to the requisite level set forth in section 5107(b)," requiring an approximate balance of positive and negative evidence regarding any issue material to the determination).

Moreover, the record does not demonstrate, nor does the appellant argue, that there is anything unique about the appellant's educational background or abilities that would preclude him from obtaining sedentary employment. He appears to suggest that a college degree is a prerequisite to all sedentary employment and that the Board was required, given his high school education, to consider or suggest what types of sedentary employment he is capable of obtaining. The Board disagreed, and the Court holds that the Board's conclusion is not clearly erroneous. *Bowling*, 15 Vet.App. at 6. Although "a TDIU determination does not require any analysis of the actual

opportunities available in the job market," *Smith v. Shinseki*, 647 F.3d 1380, 1385 (Fed. Cir. 2011), the Board did consider whether the evidence of record demonstrated that a vocational assessment would be appropriate in this matter. R. at 27. The Board found, given its finding that sedentary employment would be possible despite the appellant's knee disabilities, that a vocational assessment would not provide any benefit and therefore is not required. *Id*. The Court finds that the Board has provided an adequate statement of its reasons and bases for its decision. *See Allday, supra*.

The appellant also argues that the Board's reasons and bases for its decision are inadequate because the Board impermissibly considered his non-service-connected disabilities. The Court disagrees. The Board considered, as it was required to do, all the relevant medical evidence regarding the appellant's employability. R. at 18-23. In evaluating this evidence, the Board recognized that much of the medical evidence indicates that the appellant's non-service-connected disabilities, together with his service-connected bilateral knee disabilities, impair his ability to work. To the extent the appellant attempts to argue that the Board failed to specifically identify the degree to which his service-connected disabilities, as opposed to his non-service-connected disabilities, impair his ability to work, the Court finds that such an analysis was not required in this matter. The Board specifically found that the appellant's knee disabilities did impair his ability to work, but that impairment did not render him unemployable. R. at 23-24. As noted above, there is no dispute that the appellant's disabilities, service connected or not, impair his ability to work. There is also no dispute that the appellant is physically able to perform sedentary work. Because the Board ultimately concluded that the appellant is not precluded from all types of employment, to the extent the Board could have or should have more precisely parsed the extent that was caused by his service-connected disabilities versus his non-service-connected disabilities, the appellant has not demonstrated prejudice and the Court finds that any such error is harmless. *See* 38 U.S.C. § 7261(b)(2) (providing that the Court shall take due account of the rule of prejudicial error); *Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991) (holding that "strict adherence" to the reasons-or-bases requirement is not warranted where it would impose additional burdens on the Board with no benefit flowing to the veteran); *see also Shinseki v. Sanders*, 556 U.S. 396, 407-10 (2009) (under the harmless error rule, the appellant has the burden of showing that he suffered prejudice as a result of VA error).

### III. CONCLUSION

After consideration of the appellant's and the Secretary's pleadings, and a review of the record before the Court, the appeal as to the Board's February 26, 2013, decision denying entitlement to bilateral disability ratings in excess of 20% for the appellant's service-connected right and left knee conditions has been abandoned. Further, those matters have not been reviewed by the Court on the merits. Therefore, the appeal as to those matters is DISMISSED. The Board's denial of TDIU is AFFIRMED.

LANCE, *Judge*, with whom HAGEL, *Judge*, joins, concurring: I fully join the majority's opinion. I write separately to stress the importance of finality and to suggest a way to mitigate some concerns that might arise from a judge's jurisprudential decision to review an abandoned issue on the merits.

Since the superposition of judicial review on an administrative system by the Veterans Judicial Review Act of 1988, 38 U.S.C. § 7251 *et seq*., the Court has tried to walk a narrow slack wire between two stanchions with no net.[6] It is tasked with reconciling two methods to arrive at a decision in a matter and the underpinnings supporting each. On one hand is review by a court of law that, in the history of this country's courts, has been adversarial in nature and with a view to finality—in other words, to absolutely resolve the matters disputed. On the other hand is the long-held position that claims of those who have borne the burden of military service or their survivors should be treated to an uncomplicated, straightforward, and non-adversarial system. In short, when reviewing the denial of claims made by this class of people, we should be solicitous to them. *Compare, e.g., Ribaudo v. Nicholson,* 21 Vet.App. 137, 141 (2007) ("'We are not final because we are infallible, but we are infallible only because we are final.'" (quoting *Brown v. Allen*, 344 U.S. 443, 540 (1953) (Jackson, J., concurring))), *with Brown v. Gardner*, 513 U.S. 115, 118 (1994) (explaining that "interpretive doubt is to be resolved in the veteran's favor"); *see King v. St. Vincent's Hosp.,* 502 U.S. 215, 221 (1991) (referring to "the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor"). It is against this backdrop that

---

[6] A slack wire requires the performer not only to navigate in a narrow straight line, but also to compensate for the sway caused by the wire's inherent instability.

the Court is faced with the daunting task of balancing the doctrine of finality against the ability of a veteran to seek redress after the adjudication of his claim is final, in some cases years later. *See* 38 U.S.C. §§ 5109A, 7103, 7111. Fortunately, this balance is not only achievable, but the method of doing so has already been resolved, albeit in a different context.

"It is just as important that there should be a place to end as that there should be a place to begin litigation." *Stoll v. Gottlieb*, 305 U.S. 165, 172 (1938). Indeed, finality is a bedrock principle of our judicial system. It provides certainty to the parties involved in a dispute, and it promotes judicial efficiency by discouraging piecemeal litigation. *See*, *e.g.*, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 170 (1974); *Radio Station WOW v. Johnson*, 326 U.S. 120, 123-24 (1945). In the veterans benefits context, when appealing a final Board decision to this Court, claimants have an obligation to raise all arguments to avoid piecemeal litigation. *See Fugere v. Derwinski*, 1 Vet.App. 103, 105 (1990) ("Advancing different arguments at successive stages of the appellate process does not serve the interests of the parties or the Court. Such a practice hinders the decision-making process and raises the undesirable specter of piecemeal litigation."), *aff'd*, 972 F.2d 331 (Fed. Cir. 1992). As the majority reaffirms, *ante* at 8-9, the Court not only has *jurisdiction* over each final denial contained in that decision, *see Fagre v. Peake*, 22 Vet.App. 188, 191 (2008), it also has the exclusive *authority* to rule on each issue on appeal that falls under the umbrella of its statutorily authorized jurisdiction, *see* 38 U.S.C. §§ 7252 (providing that the Court "shall have exclusive jurisdiction to review decisions of the Board of Veterans' Appeals"); 7261 (outlining the Court's scope of review).

Consequently, when an appellant abandons an issue on appeal, this Court has the authority to nonetheless examine that issue, including the discretion to deem the abandonment a concession of no error in the Board decision. The rationale behind this is twofold: it provides an incentive to appellants to meet their obligation of raising all possible arguments on direct appeal, and it helps to alleviate the burden on VA's overtaxed adjudication system[7] caused by subsequent *collateral* attacks

---

[7] The vast breadth of the Department of Veterans affairs, which employs more than "312,841 full-time equivalent employees," and the tremendous burdens on the claims adjudication system, which in fiscal year 2013 "received over 1 million claims for disability benefits and processed 1,169,085 claims," cannot be overstated. *See* VETERANS BENEFITS ADMINISTRATION, DEP'T OF VETERANS AFFAIRS, 2013 PERFORMANCE AND ACCOUNTABILITY REPORT pt. I, at 1, 3 (2013).

on issues that could have been fully resolved on *direct* appeal to the Court.    The idea of permitting a litigant to waive important rights or litigating positions is applied even in cases of criminal defendants who face imprisonment when they do so.  *Peretz v. United States*, 501 U.S. 923, 936 (1991) (explaining that even "[t]he most basic rights of criminal defendants are . . . subject to waiver").

For an appellant, there is simply no benefit to be gained by not raising an argument before the Court on direct appeal.  Once the time to appeal a final Board decision expires, the appellant can thereafter generally only attack the Board's decision on the basis of CUE—a far more onerous burden than challenging the decision on direct appeal.  *See King v. Shinseki*, 26 Vet.App. 433, 436-37 (2014) (emphasizing "that [CUE] is 'a very specific and rare kind of error,' and the burden of demonstrating [CUE] is an onerous one"); *see also Evans v. McDonald*, __ Vet.App. __, __, No. 11-2917, 2014 WL 6769767, at *4 (Dec. 2, 2014) (en banc) (noting that "[t]he Court cannot review a CUE motion under the same standard by which it reviews matters on direct appeal").  Conversely, there is no *disadvantage* in raising a colorable argument at the Court, even if an appellant believes the odds of success to be low.

Generally, challenges to final decisions on the basis of CUE can be broken into two broad categories: "Either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied." *Russell v. Principi*, 3 Vet.App. 310, 313 (1992) (en banc). The latter of these categories—that the law was incorrectly applied—can and should be raised on direct appeal to this Court, where a claimant has a much lower evidentiary burden to satisfy.  *See King*, 26 Vet.App. at 441 (holding that to "'prove the existence of [CUE] . . . , the claimant must show that an outcome-determinative error occurred,'" which "means that, absent the alleged clear and unmistakable error, the benefit sought would have been granted at the outset " (quoting *Bustos v. West*, 179 F.3d 1380, 1381 (Fed. Cir. 1999))).  In contrast, the former type of CUE—where the correct facts as known were not before the adjudicator—could, in the appropriate case, satisfy the Court's criteria for recalling its mandate, which "may be exercised . . . to prevent injustice" or to "protect the integrity of its own processes." *Serra v. Nicholson*, 19 Vet.App. 268, 271 (2005).  Hence, although an appellant would lose the ability to challenge the Board's decision on the basis of CUE, *see* 38 C.F.R. § 20.1400 (2014), there

would be no practical consequence, as the appellant could still file a motion in this Court to recall its mandate in limited, but appropriate, circumstances.

It is not immediately clear why an appellant would make a knowing and voluntary litigation choice *not* to raise even a colorable argument on direct appeal, only to preserve the right to bring a collateral attack under a much higher standard of proof at a later date. Indeed, an appellant would not suffer harm from raising such an argument, rather than abandoning an issue. To further mitigate any remaining concerns arising from the merits review of abandoned issues, however, I would adopt a rule akin to that of Rule 60(b) of the Federal Rules of Civil Procedure, which is designed to "strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Boughner v. Sec'y of Health, Educ., & Welfare*, 572 F.2d 976, 977 (3d Cir. 1978).

Rule 60(b) provides that, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" for reasons including (1) mistake, (2) newly discovered evidence, (3) fraud, and "any other reason that justifies relief." FED. R. CIV. P. 60(b). "[M]otions under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." FED. R. CIV. P. 60(c). By adopting a similar rule, the Court can ensure that an otherwise preclusive decision can be set aside when necessary in the interests of justice without compromising the Court's interest in preserving the finality of its own decisions. This is not to say that Rule 60 should be copied wholesale from the Federal Rules and pasted into our own Rules of Practice and Procedure; naturally, accommodations must be made for the unique principles that have governed the law of veterans benefits as set forth by Congress and interpreted by the Court. Ultimately, however, this approach has the benefit of avoiding the situation created by *Cacciola v. Gibson*, 27 Vet.App. 45 (2014), where the Board is placed into the illogical position of "review[ing] the decision of a higher tribunal." *Winsett v. Principi*, 341 F.3d 1329, 1331 (Fed. Cir. 2003) (citing *Disabled Am. Veterans v. Gober*, 234 F.3d 682, 693 (Fed. Cir. 2000)).

In short, recognizing this Court's discretion to affirm on the merits abandoned issues encourages appellants to raise all arguments on appeal, avoids piecemeal litigation, and respects the finality of Board and Court decisions. Further, requiring parties to file a motion with the Court to

18

recall mandate instead of asking the Board to divine the Court's intent in prior decisions avoids the untenable situation of requiring the Board to review this Court's decisions. Finally, to mitigate any remaining concerns from a merits review of abandoned issues, I would adopt a properly modified rule akin to Rule 60 of the Federal Rules of Civil Procedure—one which would effectuate the balance between the Court's interest in finality and solicitude to those who have sacrificed so much.

PIETSCH, *Judge*, concurring in the result: I write separately with respect to the part of the opinion affirming the Board's denial of referral under 38 C.F.R. § 4.16(b) for consideration of TDIU on an extraschedular basis. I disagree with the opinion's holding that the Board provided adequate reasons or bases for rejecting the appellant's argument that his limited education and employment experience precludes him from substantially gainful sedentary employment. However, I believe that the appellant failed to meet his burden to demonstrate that the error was prejudicial and therefore concur in the affirmance of Board's decision not to refer a TDIU for extraschedular consideration.

The appellant argues before the Court, inter alia, that the Board provided inadequate reasons or bases for rejecting his argument (R. at 42) that his limited education, consisting of a high school degree, and his limited employment experience, consisting of manual labor-intensive positions, preclude him from substantially gainful employment. The Board explained that "while the Veteran's education and work experience may limit his employment opportunities, it does not seem that the lack of a college degree would preclude the Veteran from *all* sedentary employment." R. at 26 (emphasis in original).

The Board's reasons or bases are inadequate for the following reasons. First, the Board did not address the appellant's specific argument. *See Robinson v. Peake*, 21 Vet.App. 545, 552 (2008) (the Board is required to address all issues and theories that are reasonably raised by the claimant or the evidence of record), *aff'd sub. nom Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009). The appellant did not argue regarding the effects of the lack of a college degree; rather, he argued that his education was limited to a high school degree. R. at 42. There are types of education beyond a high school degree that do not constitute a college degree. Thus, the Board addressed the wrong argument. Further, the Board's explanation addressed the appellant's education but did not discuss his limited work experience.

19

Second, the Board's explanation that "it does not seem" that the lack of a college degree would preclude the veteran from all sedentary employment is speculation, not based on any evidence of record. To the extent that such a question calls for special expertise, there is no indication that the Board member who authored the decision is qualified to render an expert opinion on the matter. *See Colvin v. Derwinski*, 1 Vet.App. 171, 172 (1991) (the Board may not rely on its own judgment, in the absence of record evidence, in matters that call for specialized expertise). In addition, the legal question is not whether the veteran is precluded from all sedentary employment, but whether he is precluded from all nonmarginal sedentary employment. *See* 38 C.F.R. § 4.16(a) (2014); *see also Bowling v. Principi*, 15 Vet.App. 1, 6 (2001).

Thus, I agree with Judge Schoelen that the Board provided inadequate reasons or bases for rejecting the appellant's argument as to his limited education and experience.

However, I would find that the appellant failed to meet his burden to demonstrate that such error was prejudicial, as he fails to make any showing of prejudice in his brief. S*ee Shinseki v. Sanders*, 556 U.S. 396, 407-10 (2009) (under the harmless error rule, the appellant has the burden of showing that he suffered prejudice as a result of VA error). Further, he does not challenge the Board's finding that his service-connected knee disabilities do not preclude sedentary activities, or its finding that VA satisfied its duty to assist (including with respect to the provision of a vocational assessment), and has not pointed to any evidence in the record of proceedings demonstrating that his level of education and his employment experience categorically preclude him from sedentary employment that would provide more than marginal income. The lack of evidence in the record of proceedings before the Court on that material issue, the favorable resolution of which is necessary for the grant of a VA benefit, warrants, given the particular circumstances of this case, a finding of harmless error. *See* 38 U.S.C. § 5107(a) ("[A] claimant has the responsibility to present and support a claim for benefits."); *Skoczen v. Shinseki*, 564 F.3d 1319, 1323-29 (2009) (interpreting section 5107(a) to obligate a claimant to provide an evidentiary basis for his or her benefits claim, consistent with VA's duty to assist, and recognizing that "[w]hether submitted by the claimant or VA . . . the evidence must rise to the requisite level set forth in section 5107(b), requiring an approximate balance of positive and negative evidence regarding any issue material to the determination); *Fagen v. Shinseki*, 573 F.3d 1282, 1286 (2009) (stating that the claimant has the burden to "present and

support a claim for benefits" and noting that the benefit of the doubt standard in section 5107(b) is not applicable based on pure speculation or remote possibility).

KASOLD, *Chief Judge*, with whom PIETSCH, *Judge*, joins, dissenting in part: I write separately to note that I dissent from that part of the opinion that states "the Court retains jurisdiction over all finally decided issues, *regardless of whether the NOA itself* or the subsequent briefing narrows the issues on appeal." *Ante* at 8 (emphasis added). Whether the Court has jurisdiction over all issues finally decided in the Board's published decision – when an NOA is limited specifically to one of several issues finally decided by the Board in its published decision – is an issue that is not raised by the record in this case, and addressing this issue is wholly unnecessary to resolution of the appeal. As such, it is dicta. *See* BLACK'S LAW DICTIONARY 1100 (7th ed. 1999) (defining "obiter dictum," commonly referred to as "dicta," as "[a] judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (though it may be considered persuasive)"); *see also McDaniel v. Sanchez*, 452 U.S. 130, 141 (1981) ("dictum unnecessary to the decision in [a] case . . . [is] not controlling in this case"); *Grantham v. Brown*, 114 F.3d 1156, 1158 (Fed. Cir. 1997) ("It is axiomatic that the language in [any case] must be read in light of the facts and issues that were before the court when the language was written.")

Although the majority's statement is dicta, I further note that the majority provide no rationale for stating that the Court's jurisdiction extends to matters not covered by a narrowly tailored NOA, or how a narrowly tailored NOA "presents" an issue to the Court for decision. *See* 38 U.S.C. §§ 7252 (Court's jurisdiction is limited to the scope provided in § 7261), 7261(a) (Court has jurisdiction over issues "presented" and "necessary to its decision"). Indeed, the Secretary even suggests in his briefing that an appellant should file a limited NOA in the first instance or amend a general NOA subsequent to its filing in order to limit the Court's jurisdiction over matters decided by the Board.

In sum, I believe the scope of our jurisdiction over multiple decisions noted in a published Board decision, but explicitly not part of a limited-scope NOA, remains an open question. *Cf. Cacciola v. Gibson*, 27 Vet.App. 45, 61-62 (2014) (Kasold, C.J., concurring in the result) (noting

that the Board frequently renders multiple decisions in an issued decision and concurring that a *general* NOA places all adverse, final decisions contained in an issued Board decision on appeal).

SCHOELEN, *Judge*, dissenting in part: I concur in the majority's opinion dismissing the appellant's appeal as to the Board decision denying disability ratings in excess of 20% for the appellant's service-connected bilateral knee disabilities. Unlike the majority, I would conclude that the Board failed to provide an adequate statement of reasons or bases for its decision denying referral under 38 C.F.R. § 4.16(b) for consideration of TDIU on an extraschedular basis. The Board did not sufficiently address the appellant's limited educational and occupational history when it determined that his service-connected disabilities do not preclude substantially gainful employment. Therefore, I must dissent from the majority's decision affirming the Board's denial of TDIU.

The record demonstrates that the appellant has a high school education and an occupational history that is limited to manual-labor-intensive positions – grocery store worker and custodial laborer for the U.S. Postal Service. R. at 1099, 1390-91, 1845, 2014. The Board acknowledged the appellant's high school education and limited work experience, but stated that the medical professionals who specifically reviewed whether the appellant's service-connected disabilities alone preclude employment "unanimously concluded" that he is not precluded from performing the physical and mental acts required by employment. R. at 26. In essence, because the medical professionals concluded that the appellant's service-connected knee disabilities do not preclude sedentary employment, the Board found that the appellant is capable of substantially gainful employment.

However, the fact that the appellant may be physically able to perform sedentary employment does not mean that he is educationally and vocationally qualified to perform such employment. *See Smith v. Shinseki*, 647 F.3d 1380, 1386 (Fed. Cir. 2011) (a claimant's education and work experience are relevant to the issue of TDIU). The appellant argued to the Board that his education and employment history do not qualify him for sedentary employment. Rather than address the appellant's education or the types of employment that he has had and how such manual labor would enable the appellant to secure substantially gainful sedentary employment, the Board summarily

22

stated: "[*I*]*t does not seem* that the lack of a college degree would preclude the veteran from all sedentary employment." R. at 26 (emphasis added).

Unlike my colleagues, I am not satisfied with the Board's superficial response to the appellant's argument. There is no evidentiary basis in the record to support the Board's finding that the appellant can secure and maintain substantially gainful sedentary work; and I am not persuaded by the Board's conclusory statement that the Board properly took into account the appellant's education, training, and work history.[8] *See Beaty*, 6 Vet.App. at 537 ("[T]he B[oard] may not reject [a TDIU rating] without producing evidence, as distinguished from mere conjecture, that the veteran can perform work that would produce significant income to be other than marginal."). In fact, although the Board seemed to provide a response – albeit inadequate – to the appellant's argument that he lacked the requisite education for sedentary employment, the Board did not address whether the appellant's employment history is compatible with sedentary employment.

The majority rejects the appellant's argument stating that "he appears to suggest that a college degree is a prerequisite to all sedentary employment and that the Board was required, given his high school education, to consider or suggest what types of sedentary employment he is capable of obtaining." *Ante* at 13. The appellant refutes this contention in his reply brief, and I agree that this is not what he seeks nor what the law requires. Reply Br. at 5-6. The problem lies in the Board's statement that "it does not seem that the lack of a college degree would preclude . . . all sedentary employment," which is devoid of any factual or legal analysis and fails to consider the appellant's employment history that is limited to manual labor.

Although the medical professionals may have concluded that the appellant's bilateral knee disabilities do not preclude sedentary work, it is the Board's responsibility, as factfinder, to do more

---

[8] The Secretary contends that the Board is *not* required in every case to discuss a claimant's educational and occupational history. Secretary's Brief (Br.) at 10-14. As to this point, the majority and I are in agreement – the Board must consider a claimant's educational and occupational history. *See ante* at 11. Any suggestion by the Secretary that a claimant's educational and occupational history is not relevant to a TDIU determination is incorrect. Indeed, the Secretary's regulation concerning referral of TDIU for extraschedular consideration specifically requires "[t]he rating board [to] include a full statement as to the veteran's service-connected disabilities, *employment history*, *educational and vocational attainment*[,] and all other factors having a bearing on the issue." 38 C.F.R. § 4.16(b) (2014) (emphasis added). Moreover, his argument ignores decades of precedent to the contrary. *See Smith*, 647 F.3d at 1386; *Cathell v. Brown*, 8 Vet.App. 539, 544 (1996); *Beaty v. Brown*, 6 Vet.App. 532, 537 (1994); *Gleicher v. Derwinski*, 2 Vet.App. 26, 28 (1991); *Hatlestad v. Derwinski*, 1 Vet.App. 164, 168 (1991).

than "merely allude to [the appellant's] educational and occupational history." *Gleicher*, 2 Vet.App. at 28. The Board must "relate these factors to the disabilities of the appellant." *Id.*; *see also Cathell*, 8 Vet.App. at 544 (remanding TDIU issue where the Board failed to discuss the appellant's educational and occupational history). The Court in *Gleicher* held that the Board provided an inadequate statement of reasons or bases when it "did little more than point to the appellant's relatively advanced education and occupational experience and opine that his disabilities did not 'preclude all forms of substantially gainful employment.'" 2 Vet.App. at 28. As the Court stated in *Gleicher*, when the Board fails to relate an appellant's educational and occupational history to his disabilities, the Board "comes very close to placing upon the appellant the burden of showing he can't get work." *Id.*

The statement provided by the Board in the present case is almost indistinguishable from the statement provided in *Gleicher*. Such reasoning was inadequate in *Gleicher*, decided more than two decades ago, and it is inadequate today. Consequently, I would remand the issue of TDIU to the Board to provide an adequate statement of reasons or bases for its decision. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (holding that remand is the appropriate remedy "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate"). Therefore, I must respectfully dissent.

GREENBERG, *Judge*, dissenting in part: I write separately because although I concur with the majority's position in section II.A, I dissent from the majority's treatment of TDIU. Relying on a medical expert's opinion on the ultimate question of unemployability, as the Board did here, is nothing more than an abdication of VA's responsibility, or at least an impermissible delegation of its authority.[9]

Although TDIU is based on a veteran's service-connected disabilities, the unemployability determination is not purely a medical question. 38 C.F.R. § 4.16. Rather, in determining whether a veteran is unemployable, the Board must consider certain nonmedical facts that fall outside a medical professional's medical expertise, such as the poverty line and the veteran's educational and

---

[9] This aspect of § 4.16 was not addressed in the parties' initial briefs and was the subject of neither the Court's referral for en banc consideration nor its order for supplemental briefing.

occupational history. *See* 38 C.F.R. § 4.16(a); *see also, e.g., Beaty v. Brown,* 6 Vet.App. 532, 537, 538 (1994) (distinguishing between educational or occupational history and medical evidence). The role of medical expertise is limited to providing "description of the effects of disability upon the person's ordinary activity.'" *Floore v. Shinseki*, 26 Vet.App. 376, 381 (2013) (quoting 38 C.F.R. § 4.10 (2013)).

> As the Court recently explained,

> *it is the rating official* who is responsible for "interpret[ing] reports of examination in the light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present." More specifically, TDIU is to be awarded based on the "*judgment of the rating agency*" that the veteran is "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities."

*Id.* (emphasis added) (citations omitted). Therefore, when asked for an opinion in connection with the matter of TDIU, the medical expert's task is to diagnose and opine as to medical causation; VA is charged with finding facts and applying the appropriate legal standards, including using its judgment to determine whether the § 4.16 standard has been met, and may not delegate this duty. *Geib v. Shinseki*, 733 F.3d 1350, 1354 (Fed. Cir. 2013) ("[A]pplicable regulations place responsibility for the ultimate TDIU determination on the VA, not a medical examiner." (citation omitted)).

Here, the Board impermissibly delegated to medical examiners its responsibility to determine whether the appellant was employable, specifically by employing medical examiners' opinions regarding the ultimate question of employability without exercising any independent judgement. *See* 38 C.F.R. § 4.16. For example, in finding the appellant employable, the Board relied on a January 2001 statement by a VA examiner that "the Veteran would be eligible for many other jobs." R. at 23. When discussing a September 2008 medical opinion, the Board found it relevant that the medical expert was informed of the appellant's employment history; that medical expert "concluded that the Veteran did not have any medical issue that would preclude him from a substantially gainful employment," which the Board found "highly probative evidence against this claim." R. at 24-25. Additionally, the Board noted that a May 2012 "examiner concluded that the Veteran would not be precluded from all types of substantially gainful employment." R. at 25. The Board found that "there is no question that the examiner is of the opinion that the Veteran was not [unemployable

because of] his service connected disabilities, which is the deciding question in this case." R. at 25.[10] These examples show the Board improperly adopting the rationale of medical opinions that go beyond mere "description" of the effects of the appellant's disabilities. *See Floore,* 26 Vet.App. at 381. Rather than provide any independent analysis explaining its employability determination, the Board concluded that "the medical professionals who have specifically reviewed the issue of whether the Veteran's service connected disabilities alone preclude him from substantially gainful employment have unanimously concluded that he is not precluded from performing the physical and mental acts required by employment by his [service-connected] disabilities." R. at 26.

The Board thus impermissibly delegated its unemployability determination, relying solely on others' opinions. For this reason, I would remand the matter for the Board to appropriately adjudicate the claim, including further development of the claim as necessary.

---

[10] By contrast, the Board dismissed as nonprobative medical opinions from February, April, and June 2001 in which the doctors, respectively, "provide[d] a list of job limitations, but . . . did not specifically assert that the Veteran was *unemployable* as a result of them"; did "not show that the Veteran's knee disabilities alone render him unemployable"; and did not "find the Veteran's service-connected knee disabilities precluded employment." R. at 23-24. The Board, in error, did not explain why the doctors' failures to opine on the appellant's unemployability makes them less probative. *See Floore,* 26 Vet.App. at 381 ("medical examiners are responsible for providing a 'full description of the effects of disability upon the person's ordinary activity,' but it is the rating official who is responsible for" making the unemployability determination). The Board thus improperly excluded medical findings from examinations because they did not include an opinion on the ultimate question.