Citation Nr: 1829629 
Decision Date: 06/27/18 Archive Date: 07/02/18

DOCKET NO. 97-25 070 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Entitlement to extraschedular consideration under 38 C.F.R. §§ 3.321 (b)(1) and 4.16(b) for chronic lumbosacral strain with hip, thigh, buttocks, and calf pain from September 25, 1996, to September 22, 2002, currently rated as 40 percent disabling.

2. Entitlement to extraschedular consideration under 38 C.F.R. §§ 3.321 (b)(1) and 4.16(b) for chronic lumbosacral strain with hip, thigh, buttocks, and calf pain from September 23, 2002, to April 19, 2005, currently rated as 50 percent disabling.


REPRESENTATION

Veteran represented by: Daniel G. Krasnegor, Attorney


ATTORNEY FOR THE BOARD

B. Cannon, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the United States Air Force from July 1973 to April 1975. 

This matter comes before the Board of Veterans' Appeals (Board) from a July 2007 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina. A hearing was not requested. 

The Veteran is service-connected for chronic lumbosacral strain with hip, thigh, buttocks, and calf pain from September 25, 1996. In August 2008, the Board assigned staged ratings of 40 percent from September 25, 1996, to September 23, 2002, 50 percent from September 23, 2002, to April 19, 2005, and 60 percent from April 20, 2005.

In June 2009, the Veteran filed a Joint Motion for Partial Remand (JMR), appealing the assignment of staged ratings of 40 percent and 50 percent. Both parties to the JMR agreed that no appeal was being sought for the assignment of the 60 percent rating from April 20, 2005. Since that time, Veteran's counsel has maintained that the Veteran is only appealing the periods from September 25, 1996 to April 19, 2005. See, e.g., January 2017 correspondence (received 1/24/17).

The United States Court of Appeals for Veterans Claims granted the JMR, vacating and remanding that part of the Board's August 2008 decision which assigned staged ratings of 40 percent and 50 percent. 

In January 2010, the Board denied the Veteran's claims for higher staged ratings on a schedular basis. That aspect of the January 2010 decision was not appealed. The Board remanded the issues of entitlement to extraschedular consideration under the provisions of 38 C.F.R. §§ 3.321(b)(1) and 4.16(b). Additional Board remands were issued in August 2010, June 2011, and August 2014. 

In December 2015, the Board remanded the Veteran's claims to the Director of Compensation for extraschedular consideration. In April 2016, the Director of Compensation issued a memorandum stating that the Veteran was not entitled to extraschedular consideration for any period from September 25, 1996 to April 19, 2005. 

In an April 2017 remand, the Board noted inconsistencies between the Veteran's work history as reported in filings submitted to the Board and in filings submitted to the Social Security Administration. The Board remanded the Veteran's claims to obtain employment verification from the Veteran and his former employers. 

The issue of entitlement to TDIU from August 8, 2011, has been raised by the record in a VA 21-8940 Application for Increased Compensation Based on Unemployability received on that date. That issue has not been adjudicated by the RO. Therefore, the Board does not have jurisdiction over it, and it is referred to the RO for appropriate action. 38 C.F.R. § 19.9(b) (2017).


FINDINGS OF FACT

1. From September 25, 1996, to September 22, 2002, the Veteran's service-connected disabilities alone are of sufficient severity to produce unemployability.

2. From September 23, 2002, to April 19, 2005, the Veteran's service-connected disabilities alone are of sufficient severity to produce unemployability.


CONCLUSIONS OF LAW

1. From September 25, 1996, to September 22, 2002, the criteria for entitlement to a TDIU have been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.340, 3.341, 4.15, 4.16, 4.18, 4.19 (2017).

2. From September 23, 2002, to April 19, 2005, the criteria for entitlement to a TDIU have been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.340, 3.341, 4.15, 4.16, 4.18, 4.19 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

As already noted, in January 2010, the Board recognized a claim of entitlement to extraschedular consideration for TDIU as raised within the context of the current appeal. Since a claim for TDIU has been raised by the January 2010 Board decision and adjudicated by the RO, the Board will address entitlement to extraschedular consideration for TDIU. 

The weight of the evidence supports entitlement to TDIU for the entire period on appeal. The Director of the Compensation has provided an April 2016 opinion to the contrary. As will be explained below, the Board finds that the opinion is entitled to minimal probative value because it does not consider contemporaneous medical records of the Veteran's unemployment prior to June 1999, substantial gaps in the Veteran's employment history, evidence of many missed days during short-term periods of employment, and evidence that sedentary employment is negatively impacted by the Veteran's service-connected back disorder. 

VA regulations indicate that when a veteran's schedular rating is less than total (for a single or combination of disabilities), a total rating may nonetheless be assigned: 1) if there is only one disability, this disability shall be ratable at 60 percent or more; and 2) if there are two or more disabilities, at least one disability shall be ratable at 40 percent or more, and there must be sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a). Disabilities of one or both upper extremities, or of one or both lower extremities, including the bilateral factor, if applicable, constitutes a single disability under § 4.16(a). The same is true for disabilities resulting from common etiology or a single accident. 

A total disability rating may also be assigned pursuant to the procedures set forth in 38 C.F.R. § 4.16(b) for veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in § 4.16(a). 

The Veteran does not meet the schedular criteria for TDIU. From September 25, 1996, to September 22, 2002, his service-connected disabilities are pseudofolliculitis at 0 percent and chronic lumbosacral strain with hip, thigh, buttocks, and calf pain at 40 percent. From September 23, 2002, to April 19, 2005, his service-connected disabilities are pseudofolliculitis at 0 percent and chronic lumbosacral strain with hip, thigh, buttocks, and calf pain at 50 percent. Because he does not have a single disability rating of 60 percent or a combined rating of 70 percent, the schedular criteria for TDIU are not met. 

Nevertheless, it is the established policy of VA that all Veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. In such cases, rating boards are to submit to the Director, VA Compensation Service, for extraschedular consideration Veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards. 38 C.F.R. § 4.16(b). 

An award of TDIU "does not require proving 100 percent unemployability." Roberson v. Principi, 251 F.3d 1378, 1385 (Fed. Cir. 2001). Rather, the grant of an award of TDIU requires that the claimant demonstrate an inability "to secure and follow a substantially gainful occupation by reason of service-connected disabilities." 38 C.F.R. § 4.16(b). When making this determination, "the central inquiry is whether the veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Pederson v. McDonald, 27 Vet. App. 276, 286 (2015) (internal citations and quotations omitted). Additionally, the Board "must take into account the individual veteran's education, training, and work history" but "may not consider non-service-connected disabilities or advancing age." Id. (internal citations omitted).

From September 25, 1996, through May 31, 1997, the weight of the evidence indicates that the Veteran was unemployed due to his service-connected back disorder. In a November 1996 private medical record, the Veteran indicates that he had been previously employed as a bus driver, but that he has not worked since a March 1996 motor vehicle accident. Private medical records dated January 1997, February 1997, and May 1997 also state that the Veteran has not worked since March 1996. A February 1997 private doctor states that he sees no signs of disability, but notes that the Veteran "does have a history of chronic back [pain] and apparently has had problems holding onto jobs because of inability to continue work because of his back pain." Taken together, this constitutes evidence of unemployability due to the Veteran's service-connected back disorder. 

The Veteran's non-contemporaneous testimony regarding employment during this time period is less weighty than the medical evidence cited above. The Veteran's June 2017 TDIU application states that he worked full-time as a bus driver from December 1996 to April 1997. Consistent with this, in SSA records with an effective filing date of March 14, 2007, the Veteran states that from January 1997 to April 1997, he worked full-time as a school bus driver. See SSA records (received 9/8/17, page 29 of 70). In his October 1998 VA hearing testimony, the Veteran states that he worked for Sullivan Wholesale in March 1997. But none of these records were contemporaneous with the Veteran's injury and none was made to a treating physician. For this reason, from September 25, 1996, through May 31, 1997, the Board will ascribe greater weight to the contemporaneous statements made to treating medical providers, which indicate unemployability due to a service-connected back disorder. The Veteran is entitled to TDIU for this period. 

For the period from June 1997 to April 19, 2005, the evidence also supports entitlement to TDIU. This is because even though the Veteran was sporadically employed for different periods during this time frame, his service-connected back disorder prohibited him from consistently performing the duties of any job and from maintaining a single job long-term. As the Veteran told the Social Security Administration in 2007: "During the past 15 years, I have had to change jobs frequently because I have been unable to perform the more strenuous physical demands of most of the positions I have held" and "I have missed a considerable number of work days on every job I have had in the past 15 years." This statement is supported by a February 1997 private doctor's statement that the Veteran "apparently has had problems holding onto jobs because of inability to continue work because of his back pain." Consistent with this, a September 2017 private medical opinion (received 10/26/15) indicates that even sedentary employment would be impacted by the Veteran's back disorder. 

The Board will address in greater detail the Veteran's employment history from June 1997 to April 19, 2005. From June 1997 to February 1998, the Veteran worked as a delivery driver at a meat packing warehouse, a period of nine months, but "eventually had to quit due to the physical demands of the job." See June 2017 TDIU application. There is no evidence that the Veteran was employed for the six months from March 1998 to August 1998. In addition, from September 1998 to March 1999, the Veteran worked as an enumerator for the Census Bureau, a period of seven months. See SSA records (received 9/8/17, page 29 of 70). There is no evidence that the Veteran was employed for the nine months from April 1999 to December 1999. Consistent with this, a May 1999 private medical record indicates that the Veteran is unemployed. 

This evidence indicates that from June 1997 to December 1999 the Veteran was able to work for relatively brief periods, but that his service-connected disorders ultimately prevented him from maintaining substantially gainful employment. When considered in light of the record as a whole, the evidence from June 1997 to December 1999 supports entitlement to TDIU. 

Subsequent evidence is consistent with inability to maintain substantially gainful employment. From January 2000 to May 2001, a period of 17 months, the Veteran worked 20 hours per week as a mobile operator at a hospital and 20 hours per week as a mobile operator at another location. See SSA records (received 9/8/17, page 29 of 70). He states that he made $9.00 per hour at the hospital and $6.00 at the other location. Id. Consistent with this, the Veteran's June 2017 TDIU application indicates that from January 2000 to April 2001, he worked 20 hours per week as a bus driver for Cape Fear Valley Medical Center. In September 2017, the RO obtained information from Cape Fear, corroborating that the Veteran worked there from January 2000 to May 2001 and indicating that he earned $3,018.51 from January 5, 2001, through May 11, 2001. Assuming the Veteran's stated salary of $9.00 per hours, this corresponds to roughly 20 hours per week. The Veteran was unable to maintain his employment as a mobile operator, in that there is no evidence that the Veteran was employed for the 16 months from June 2001 to September 2002. 

A form submitted by Devers Elementary School indicates that the Veteran had a temporary job as a janitor from October 2002 to May 2003. See October 2011 correspondence (received 10/24/11). But the Veteran indicates that he missed 20 days due to illness during his eight months there. See August 2011 TDIU application. By contrast, he only missed 40 days during his three years of employment as a bus driver from April 1993 to March 1996. Id. 

There is no evidence that the Veteran was employed during the 23 months between June 2003 and April 19, 2005 (the end of the period on appeal). Consistent with this, a December 2003 VA medical record describes the Veteran as "currently unemployed." Taken together, from June 1997 to April 19, 2005, the evidence indicates inability to maintain substantially gainful employment, based on increased absences during short-term employment due to service-connected disability and expanding periods of unemployment between short-term jobs. This evidence supports entitlement to TDIU. 

The Board notes that there is conflicting evidence for the period of the Veteran's employment at Devers Elementary School. Several records indicate that he worked there from May 2002 to April 2003. See October 2010 attorney letter (received 10/13/10); May 2011 attorney letter (received 5/5/11); October 2011 attorney letter (received 10/21/11); August 2011 TDIU application (received 8/10/11). Other records state that he was employed there from October 2002 to May 2003. See June 2017 TDIU Application; SSA records (received 9/8/17, page 29 of 70). The most probative piece of evidence is the form submitted by a school administrator, because the administrator presumably had contemporaneous documentation of the specific dates of the Veteran's employment. See October 2011 correspondence (received 10/24/11). Since this piece of evidence indicates employment from October 2002 to May 2003, the Board has used that timeframe as the period of the Veteran's employment. Id. 

The Board also notes that deficiencies in the September 2015 private medical opinion render some parts of that opinion inadequate, but not the portion stating that the Veteran's back disorder has a negative impact on sedentary employment. The Board finds that the main problem with the September 2015 private medical opinion is that it relies on a "Summary of Employment provided by the Veteran," without any reference to employment information contained in SSA records or TDIU applications. Because of this, the opinion that the Veteran was "clearly unable to perform or maintain even a sedentary job" from September 25, 1996, is clearly contradicted by the Veteran's own testimony that he worked as an enumerator for the U.S. Census Bureau for nine months from September 1998 to March 1999. Likewise, the opinion that from September 25, 1996, "[h]is prior occupation of bus driver was out of the question" is clearly contradicted by the Veteran's testimony that he had worked as a delivery driver for nine months from June 1997 to February 1998 and as a driver for a hospital from January 2000 to May 2001. 

Notwithstanding, the September 2015 conclusion that sedentary employment is negatively impacted by the Veteran's back disorder is credible. The reason is that this conclusion is based on a review of medical records spanning the entire course of the appeal, and not on an incomplete review of the Veteran's employment history. That part of the September 2015 opinion is credible and supports entitlement to TDIU. 

The Board is aware that in April 2016 the Director of Compensation opined that the Veteran is not entitled to TDIU on an extraschedular basis. The Board finds that opinion of minimal probative value, in that it is not based on a complete review of the record. The April 2016 opinion notes that the Veteran held many jobs during the time of the appeal, but does not take into account the relatively short duration of those jobs and the substantial gaps in employment. The opinion notes the Veteran's employment as a custodian, but does not consider the 20 days he missed due to illness in roughly eight months. The opinion also states that there is "no evidence that [the Veteran's] absences from work were due to his disabilities," which is contradicted by the August 2011 TDIU application and the Veteran's medical records. For these reasons, the April 2016 opinion is of minimal probative value. The Board will resolve reasonable doubt in the Veteran's favor and award entitlement to TDIU. 

The Veteran also seeks extraschedular consideration for his back disorder. However, the ratings assigned for the respective periods in question of 40 and 50 percent are found to contemplate the severity of the Veteran's service-connected back disorder. In addition, the medical evidence supports only outpatient treatment for a back disorder, not hospitalization for a back disorder, and the impact on employment is now addressed by the newly assigned TDIU, dated back to September 1996. In summary, since TDIU is already granted, the current scheduler ratings contemplate the severity of the Veteran's back disability, and there is no evidence of recurrent hospitalizations, entitlement to extraschedular consideration under 38 C.F.R. § 3.321(b)(1) is not warranted. 


ORDER

From September 25, 1996, to September 22, 2002, entitlement to TDIU is granted, subject to the laws and regulations governing the payment of monetary benefits.

From September 23, 2002, to April 19, 2005, entitlement to TDIU is granted, subject to the laws and regulations governing the payment of monetary benefits.




____________________________________________
Michael J. Skaltsounis 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs