﻿Citation Nr: AXXXXXXXX
Decision Date: 03/31/20 Archive Date: 03/31/20

DOCKET NO. 190522-14716
DATE: March 31, 2020

ORDER

A higher rating of 40 percent for service-connected degenerative arthritis of the thoracolumbar spine with intervertebral disc syndrome (IVDS) is granted.

A higher rating of 20 percent for service-connected right lower extremity radiculopathy associated with degenerative arthritis of the thoracolumbar spine with IVDS is granted.

A higher rating of 20 percent for service-connected left lower extremity radiculopathy associated with degenerative arthritis of the thoracolumbar spine with IVDS is granted.

A total disability based on individual unemployability (TDIU) is denied.

FINDINGS OF FACT

1. The Veteran occasionally manifested forward flexion of his thoracolumbar spine of 30 degrees or less during the period on appeal.

2. The Veteran manifested moderate incomplete paralysis in his right lower extremity nerves during the period on appeal.

3. The Veteran manifested moderate incomplete paralysis in his left lower extremity nerves during the period on appeal.

4. The Veteran’s service-connected disabilities, considered as one for TDIU purposes with a rating of 60 percent, were not of such severity during the period on appeal that he was unable to secure or follow a substantially gainful occupation.

CONCLUSIONS OF LAW

1. The criteria for a higher rating of 40 percent for service-connected degenerative arthritis of the thoracolumbar spine with IVDS have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.6, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a Diagnostic Code 5243.

2. The criteria for a higher rating of 20 percent for service-connected right lower extremity radiculopathy have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.6, 4.7, 4.10, 4.123, 4.124, 4.124a, 4.124a Diagnostic Code 8620.

3. The criteria for a higher rating of 20 percent for service-connected left lower extremity radiculopathy have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.6, 4.7, 4.10, 4.123, 4.124, 4.124a, 4.124a Diagnostic Code 8620.

4. The criteria for a TDIU have not been met. 38 U.S.C. § 5107; 38 C.F.R. §§ 3.102, 3.341, 4.16, 4.19, 4.25, 4.26.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from February 1971 to January 1975. This matter comes to the Board of Veterans’ Appeals (Board) from a May 2019 rating decision. In timely appealing the determination made therein with respect to a higher rating for his service-connected degenerative arthritis of the thoracolumbar spine with IVDS, the Veteran requested the evidence submission review option of the modernized review system (created by the Veterans Appeals Improvement and Modernization Act).

This option allows for consideration of evidence of record at the time of the rating decision, submitted with the appeal, and submitted within 90 days of the appeal. Here, evidence was added to the record outside of these allowable times. The Board may not consider this evidence. 38 C.F.R. § 20.300. The Veteran may file a supplemental claim and submit or identify it if he wants it considered. 38 C.F.R. § 3.2501. Provided it is new and relevant, another decision will be issued considered it as well as the previous evidence. Id. Specific instructions for filing a supplemental claim are included with this decision.

At the outset, the Board finds it helpful to clarify the period on appeal. It begins on the date of receipt of the claim. The Veteran submitted an incomplete claim on October 2, 2018. He submitted a complete claim less than a year later in February 2019. As such, his claim is considered as having been filed when the incomplete claim was received. 38 C.F.R. § 3.155(c). The period on appeal ends when a decision is made with respect to the claim. Here, notice of the aforementioned rating decision was sent to the Veteran on May 14, 2019. The period on appeal therefore spans from October 2, 2018, to May 14, 2019. A higher rating may be effective up to a year before a claim is filed, however. 38 U.S.C. § 5110(b)(3); 38 C.F.R. § 3.400(o)(2). As such, the period on review begins October 2, 2017.

While the Veteran did not identify higher ratings for his service-connected right and left lower extremity radiculopathy as issues when he filed his incomplete claim or his complete claim, he referenced “ lower extremities left and right and back ” in both. The Board thus liberally construes the claim to include these issues. They were not adjudicated in the May 2019 rating decision. Nevertheless, they may be adjudicated herein. The Veteran’s radiculopathy disabilities indeed are associated with his thoracolumbar spine disability, which was adjudicated below. The issue of a TDIU finally has been raised by him as part and parcel to the aforementioned higher rating issues. Rice v. Shinseki, 22 Vet. App. 447, 453-455 (2009).

Higher Ratings

Ratings represent as far as practicably can be determined the average impairment in earning capacity due to a disability. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. A rating is assigned under the Rating Schedule by comparing the extent to which a claimant’s disability impairs her ability to function under the ordinary conditions of daily life, as demonstrated by her symptoms, with the criteria for the disability. Id.; 38 C.F.R. § 4.10; Schafrath v. Derwinski, 1 Vet. App. 589, 593 (1991). The disability’s history and all other relevant evidence is to be considered. 38 C.F.R. §§ 4.1, 4.6. Examinations are to be interpreted and, if necessary, reconciled. 38 C.F.R. § 4.2.

If two ratings are potentially applicable, the higher rating is assigned if the disability more nearly approximates the criteria required for it. Otherwise, the lower rating is assigned. 38 C.F.R. § 4.7. Any reasonable doubt regarding the degree of disability, or any other point, is resolved in favor of the claimant. 38 U.S.C. § 5107 (b); 38 C.F.R. §§ 3.102, 4.3; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). Different initial ratings may be assigned for different periods of time for the same disability, a practice known as staging the rating. Hart v. Mansfield, 21 Vet. App. 505, 509-510 (2007); Francisco v. Brown, 7 Vet. App. 55, 58 (1994). If a disability has worsened, consideration therefore must be given to when the worsening occurred.

Degenerative Arthritis of the Thoracolumbar Spine with IVDS

38 C.F.R. § 4.71a addresses disabilities of the musculoskeletal system. Diagnostic Codes 5235 through 5243 thereunder, which address all spinal disabilities, use the General Rating Formula for Diseases and Injuries of the Spine (General Formula). This formula is used with or without symptoms like pain, stiffness, or aching. It assigns a 20 percent rating for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees, combined range of motion not greater than 120 degrees, or muscle spasm or guarding severe enough to result in abnormal gait or abnormal spinal contour. 

A 40 percent rating requires forward flexion of the thoracolumbar spine of 30 degrees or less or favorable ankylosis of the entire thoracolumbar spine. Unfavorable ankylosis of the entire thoracolumbar spine results in a 50 percent rating. The maximum 100 percent rating is reserved for unfavorable ankylosis of the entire spine. The spine has two components, thoracolumbar and cervical. Normal thoracolumbar spine range of motion is from 0 to 90 degrees forward flexion and from 0 to 30 degrees extension, left and right lateral flexion, and left and right lateral rotation for a combined total of 240 degrees. Note (2); Plate V. 

Important factors to consider include weakness, excess fatigability, swelling, incoordination, more or less movement than normal, and painful movement. 38 C.F.R. §§ 4.40, 4.45, 4.59. A higher rating may be assigned when there is functional loss due to these factors, to include during flare-ups and on repeated use over time. Id.; DeLuca v. Brown, 8 Vet. App. 202 (1995). However, functional loss exists only if the factor affects some aspect of the normal working movements of the body. Mitchell v. Shinseki, 25 Vet. App. 32 (2011). For each objective neurologic abnormality associated with the spinal disability, a separate rating finally is to be assigned under the appropriate Diagnostic Code. Note (1). 

For Diagnostic Code 5243, which addresses IVDS, a rating is assigned under either the General Formula or the Formula for Rating IVDS Based on Incapacitating Episodes (IVDS Formula) depending on which is higher. Incapacitating episodes having a total duration of at least two weeks but less than four weeks during the past 12 months merit a 20 percent rating under the IVDS Formula. A total duration of at least four weeks but less than six weeks results in a rating of 40 percent, while the maximum 60 percent rating is awarded when it is at least six weeks. An incapacitating episode is a period of acute signs and symptoms that requires treatment and bed rest prescribed by a physician. Note (1).

Initially, the Veteran’s service-connected degenerative arthritis of the thoraco-lumbar spine with IVDS was assigned a 20 percent rating under Diagnostic Code 5242. This was later change to Diagnostic Code 5243. The Board finds that a higher rating is warranted during the period on appeal under the General Formula. A rating of 40 percent, but no higher, specifically is warranted. No ankylosis, whether favorable or unfavorable, was found upon VA medical examinations in June 2018, November 2018, or March 2019. VA and private treatment records further contain no indication whatsoever of any ankylosis. This precludes a rating of 100 percent as well as 50 percent and leaves forward flexion of the thoracolumbar spine of 30 degrees or less as the only avenue for achieving a 40 percent rating. VA and private treatment records contain no measurements in that regard. At the June 2018 examination, the Veteran’s thoracolumbar spine forward flexion was from 0 to 65 degrees with pain initially and after three repetitions.

The Veteran’s thoracolumbar spine forward flexion at the November 2018 examination was from 0 to 10 degrees with pain initially and after three repetitions. At the March 2019 examination, which essentially was performed during a flare-up given his report that his increased pain had become constant, his thoracolumbar spine forward flexion was from 0 to 40 degrees initially. Repetition was not performed due to his pain. The Veteran’s forward flexion, in sum, was to 30 degrees or less only once of the three occasions it was measured. However, there is no requirement that he consistently meet this criterion. A 40 percent rating indeed may be assigned if he meets it sometimes, as here. This rating is the highest allowable for limitation of motion. Any failure at the examinations to properly assess such limitation, to include during a flare-up or following repeated use over a period of time, thus is inconsequential. Sharp v. Shulkin, 29 Vet. App. 26, 33-35 (2017); Correia v. McDonald, 28 Vet. App. 158, 168 (2016). 

With respect to associated objective neurologic abnormalities, the Veteran already is service-connected and has separate ratings for right and left lower extremity radiculopathy. They are addressed below. The Board finds that a separate rating is not warranted for any other associated objective neurologic abnormality. Indeed, there is no indication of any such abnormalities. VA and private treatment records are silent in this regard. No neurologic abnormalities attributable to the Veteran’s degenerative arthritis of the thoracolumbar spine with IVDS were found at the June 2018, November 2018, or March 2019 VA medical examination. These findings are encompassing. Each examination indeed was completed using the back conditions disability benefits questionnaire. The question posed to examiners concerning neurologic abnormalities set forth bowel impairment and bladder impairment as examples. Yet is requested consideration of all additional qualifying impairments as well, given the phrasing used (“any other”). 

The Board lastly finds that a rating higher than the 40 percent is not warranted for the Veteran’s service-connected degenerative arthritis of the thoracolumbar spine with IVDS during the period on appeal under the IVDS Formula. At the outset, it is notable that there is some question as to the applicability of this formula. The doubt that exists in this regard is readily resolved in the Veteran’s favor, however. Only the June 2018 examination determined there was no IVDS. The November 2018 and March 2019 examinations, in contrast, determined that there was IVDS. IVDS further became part of the characterization of the disability. Nevertheless, there is no indication of incapacitating episodes of any duration. The latter two examinations indeed found no such episodes. VA and private treatment records also do not document any emergent/unscheduled care for acute exacerbations. They are silent concerning bed rest. 

In conclusion, use of the General Formula is more favorable to the Veteran than using the IVDS Formula. A higher rating of 40 percent is granted for his service-connected degenerative arthritis of the thoraco-lumbar spine with IVDS under the General Formula based on the criterion of forward flexion to 30 degrees or less. This determination applies to the entire period on appeal, so a staged rating is not warranted. There is no reasonable doubt to resolve in the Veteran’s favor because it was based on the preponderance of the evidence. This issue of his claim is partially granted. 

Right and Left Lower Extremity Radiculopathy 

38 C.F.R. § 4.124a addresses neurological disabilities. Diagnostic Code 8520 thereunder is for paralysis of the sciatic nerve. It, as well as Diagnostic Codes 8620 and 8720 for neuritis and neuralgia of this nerve, assigns a 10 percent rating for mild incomplete paralysis. Moderate incomplete paralysis is assigned a 20 percent rating, while moderately severe incomplete paralysis is assigned a 40 percent rating. Severe incomplete paralysis with marked muscular atrophy merits a 60 percent rating. The maximum rating of 80 percent is reserved for complete paralysis. 

Complete paralysis exists when the foot dangles and drops, no active movement is possible of the muscles below the knee, and flexion of the knee is weakened or (very rarely) lost. Diagnostic Code 8526 concerns paralysis of the anterior crural (femoral) nerve. It, as well as Diagnostic Codes 8626 and 8726 for neuritis and neuralgia of this nerve, assigned a 10 percent rating for mild incomplete paralysis. Moderate incomplete paralysis warrants a 20 percent rating, while severe incomplete paralysis receives a 30 percent rating. The maximum rating of 40 percent is reserved for complete paralysis, of paralysis of the quadriceps extensor muscles.

Diagnostic Code 8529 addresses paralysis of the external cutaneous nerve of the thigh. It, as well as Diagnostic Codes 8629 and 8729 for neuritis and neuralgia of this nerve, call for a noncompensable (0 percent) rating when there is mild to moderate paralysis. Severe to complete paralysis merits the maximum rating of 10 percent. Incomplete paralysis indicates lost or impaired function that is substantially less than complete paralysis. 38 C.F.R. § 4.124a, opening paragraph for diseases of the peripheral nerves. Moderate means “tending toward the mean or average amount.” Merriam-Webster’s Collegiate Dictionary, 798 (11th ed. 2003). Severe generally means “of a great degree” or “serious.” Id. at 1140.

When involvement is wholly sensory, the rating is limited to the mild or at most the moderate degree. Id. The maximum rating for neuritis characterized by organic changes such as loss of reflexes, muscle atrophy, sensory disturbances, and constant pain which is at times excruciating is equal to that for severe incomplete paralysis. 38 C.F.R. § 4.123. For neuritis not characterized by such organic changes, the maximum rating is equal to that for moderately severe incomplete paralysis. Id. The maximum rating for neuralgia, characterized by dull and intermittent pain, finally is equal to that for moderate incomplete paralysis. 38 C.F.R. § 4.124.

The Veteran’s service-connected right lower extremity radiculopathy associated with degenerative arthritis of the thoracolumbar spine with IVDS has been assigned a 10 percent rating under Diagnostic Code 8620. So has his service-connected left lower extremity radiculopathy associated with degenerative arthritis of the thoracolumbar spine with IVDS. The Board finds that a rating of 20 percent, but no higher, is warranted for each of these disabilities during the period on appeal. At the outset, it is notable that some dispute exists as to which Diagnostic Code is applicable. The June 2018 VA medical examination does not specify which of the Veteran’s nerves are impacted by his radiculopathy. At the November 2018 examination, his sciatic and external cutaneous nerves were identified in this regard. The March 2019 examination identified his anterior crural and external cutaneous nerves, however. 

As such, there is agreement only about the Veteran’s external cutaneous nerves. Yet he already is in receipt of the maximum allowable rating for each of his lower extremities under Diagnostic Codes 8529, 8629, and 8729 for these nerves. VA has a duty to maximize benefits. Buie v. Shinseki, 24 Vet. App. 242, 250 (2011); AB v. Brown, 6 Vet. App. 35, 38 (1993). Rating the Veteran’s disabilities under other applicable Diagnostic Codes instead therefore must be considered. Between Diagnostic Codes 8520, 8620, and 8720 for his sciatic nerves and 8526, 8626, and 8726 for his anterior crural nerves, the ratings diverge only if his symptoms are more severe than moderate. These symptoms include some findings of decreased strength and reflexes made at the examinations. Specifically, the Veteran’s strength was 2 /5 at worst with 0/5 representing no muscle movement and 5/5 representing normal strength. It usually was 3/5 or 4/5, however. His reflexes similarly were 1+ at worst with 0 being absent and 2+ being normal. 

The Veteran’s symptoms also include some findings of sensation that was decreased, but not absent, at the VA medical examinations. This corresponds with his competent and credible reports of mild to severe numbness as well as mild to moderate intermittent pain (usually dull), constant pain (may be excruciating at times), paresthesias and/or dysesthesias. Finally, trophic changes in the form of lower extremity hair loss was observed at the November 2018 examination, whine an antalgic gait was detected that the March 2019 examination. The Veteran’s symptoms, in sum, are not wholly sensory and are consistent with both neuritis characterized by organic changes as well as neuralgia. There is no maximum rating cap as a result. Overall, the Veteran’s symptoms were no worse than moderate. He indeed often had normal strength, reflexes, and sensation. When abnormalities were found, they typically were not serious. 

Indeed, the Veteran always was able to move his muscles. Usually, he moved them actively at least against gravity (3/5), if not also against some resistance (4/5). His reflexes and sensation never were absent. Although he described his numbness as severe on one occasion, his other descriptions of his decreased sensation to include numbness at all other times ranged from mild to moderate. The examination findings as to the severity of the Veteran’s disabilities finally are in agreement that they are no worse than moderate. At the June 2018 examination, he was found to have mild incomplete paralysis. Mild to moderate incomplete paralysis were the findings of the November 2018 and March 2019 examinations. With all of the aforementioned, there was little difference between the Veteran’s right lower extremity and his left lower extremity. Thus, his moderate incomplete paralysis results in a 20 percent rating for each extremity under Diagnostic Codes 8520, 8620, and 8720 for the sciatic nerves or under Diagnostic Codes 8526, 8626, and 8726 for the anterior crural nerves. 

It is not necessary to determine which of these sets of Diagnostic Codes is best here, in other words. In conclusion, a higher rating of 20 percent is granted for the Veteran’s service-connected right lower extremity radiculopathy and service-connected left lower extremity radiculopathy associated with degenerative arthritis of the thoracolumbar spine with IVDS. These determinations apply to the entire period on appeal, so staged ratings are not warranted. There is no reasonable doubt to resolve in the Veteran’s favor because they were based on the preponderance of the evidence. These issues of his claim are partially granted. 

TDIU

A TDIU is granted if a veteran is unable to secure or follow a substantially gainful occupation due to service-connected disability or disabilities rated less than 100 percent. 38 C.F.R. § 4.16(a). It may be granted on a schedular basis when there is one such disability rated at 60 percent or more or when there are two or more such disabilities with a combined rating of 70 percent or more and one is rated individually at 40 percent or more. Id. Disabilities resulting from common etiology are considered as one for purposes of determining whether there is one 60 percent or one 40 percent disability. Id.

If neither of the percentage thresholds is met, an extraschedular TDIU may be granted provided referral first is made to the Director of the Compensation and Pension Service. 38 C.F.R. § 4.16(b). In making a TDIU determination, a veteran’s education, training, and previous work experience are for consideration but his age and the effect of his nonservice-connected disabilities are not. 38 C.F.R. §§ 3.341 (a), 4.16(b), 4.19; Pederson v. McDonald, 27 Vet. App. 276, 286 (2015). When the evidence is in approximate balance, the claimant is afforded the benefit of the doubt. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 53. The applicable standard accordingly is at least as likely as not. 

The Veteran raised the issue of a TDIU as part and parcel to the higher rating issues addressed above, as noted in the introduction. Specifically, he filed a separate claim for a TDIU due to “back problems” in July 2019. It extends to encompass his service-connected right lower extremity radiculopathy and left lower extremity radiculopathy because these disabilities are associated with his service-connected degenerative arthritis of the thoracolumbar spine with IVDS. Even if that were not true, whether a TDIU is warranted must be based on consideration of all service-connected disabilities even if it was raised only as part and parcel to a higher rating for one such disability. Allport v. Wilkie, 2019 U.S. App. Vet. Claims LEXIS 849, No. 18-2000 (May 29, 2019) (non-precedential); Bethea v. Derwinski, 2 Vet. App. 252, 254 (1992) (a non-precedential decision may be cited for any persuasiveness it contains.). The Veteran’s back and radiculopathy disabilities, along with any other service-connected disabilities, therefore must be considered.

As the Veteran’s July 2019 TDIU claim was submitted within 90 days of the appeal in this matter, it constitutes evidence submitted within an allowable time. It also relates to the period on appeal, since he indicated his employment was impacted by his back as of August 2018. In a November 2019 rating decision, the TDIU claim was denied. The Veteran has not yet appealed that determination. That it exists, however, does not prevent consideration of a TDIU as an issue of this matter. The period on appeal here, from October 2, 2018, to May 14, 2019, indeed is entirely different than the period addressed by the aforementioned rating decision. Given the determination above, the Veteran’s service-connected for his degenerative arthritis of the thoracolumbar spine with IVDS had a 40 percent rating throughout the period on appeal. The Board similarly determined above that his service-connected associated right and left lower extremity radiculopathy each had a 20 percent.

The only other service-connected disability the Veteran had during the period on appeal was an associated residual lumbar spine surgical scar. It was assigned a noncompensable rating, however, and therefore does not impact whether or not he met either percentage threshold for schedular TDIU consideration. The Board finds that one of these thresholds, the 60 percent threshold for a single service-connected disability, has been met. Indeed, the Veteran’s degenerative arthritis of the thoracolumbar spine with IVDS, right lower extremity radiculopathy, and left lower extremity radiculopathy share a common etiology. They thus are considered as one. Their rating, using the combined ratings table and taking into account the bilateral factor, is 60 percent. 38 C.F.R. §§ 4.25 (ratings are not simply added together), 4.26 (an extra 10 percent is added when both legs or arms are impacted). A TDIU, if warranted, accordingly may be granted on a schedular basis. 

Unfortunately, the Board next finds that a schedular TDIU is not warranted because the Veteran’s service-connected disabilities were not of such severity that he was unable to secure or follow a substantially gainful occupation during the period on appeal. He has reported having a college education though he did not indicate what type of degree, if any, he earned and having no specialized training thereafter. He also has reported a career as a self-employed landscaper. The Veteran specified working 10 hours per day and 50 to 60 hours per week in this position from 1986 to 2018. Although he noted working as recently as June 2019, when he underwent back surgery, he also reported that he quit working full-time in August 2018. He has explained that he could no longer perform the duties required of him as a landscape business owner, so he turned over the business to his son. Finally, he indicated that he earned approximately $32,000 in 2018.

Marginal employment, which exists when annual income does not exceed the poverty threshold for one person as set by the U.S. Department of Commerce, does not equate with a substantially gainful occupation. 38 C.F.R. § 4.16(a); Faust v. West, 13 Vet. App. 342, 356 (2000). The poverty threshold for 2018 and 2019 for one person aged 65 or older, like the Veteran, was just over $12,000. See https://www.census.gov/data/tables/time-series/demo/income-poverty/historical-poverty-thresholds.html. It was not very high, in other words. However, marginal employment also exists when the poverty threshold is exceeded because employment is in a protected environment such as a family business or sheltered workshop. 38 C.F.R. § 4.16(a). The Veteran work appears to have involved a family business. However, the Board is unable to determine whether he had a substantially gainful occupation or marginal employment during the period on appeal. 

Indeed, much remains unclear given the scant information available. Additional evidence that may have been helpful for adjudication, such as earnings information from the Social Security Administration or the Veteran and a detailed statement from him, his son, or another knowledgeable individual about his employment between August 2018 when he stopped working full-time and June 2019 when he last worked, has not been supplied. Even assuming for the sake of argument that any work the Veteran did during the period on appeal qualifies as marginal employment, a position that is most favorable to him, there is no indication whatsoever that he was incapable of securing or following such a substantially gainful occupation then. He has not explained why his service-connected disabilities prevented him from doing so then. An August 2018 statement from his private podiatrist is the only supporting evidence he submitted.

This statement relates that the Veteran is “unable to perform his job as a landscape business owner.” Yet this was attributed solely to right Charcot foot, deemed a complication of peripheral neuropathy caused by his diabetes mellitus. He is not service-connected for diabetes mellitus, any peripheral neuropathy, or any right foot disability to include Charcot foot. Although radiculopathy and peripheral neuropathy may share commonalities, including the location and nature of certain manifested symptoms, they are nevertheless distinctly diagnosed disabilities. The statement therefore is inapposite here. With respect to the Veteran’s service-connected disabilities, there is no indication that his associated residual lumbar spine surgical scar had any impact on his ability to find and continue to work during the period on appeal. The VA treatment records and medical examinations discussed above with respect to higher ratings for his degenerative arthritis of the thoracolumbar spine with IVDS combined with his associated right and left lower extremity radiculopathies reveal that he used assistive devices to ambulate. 

In addition to some use of a brace and a walker, regular use of a cane indeed was reported by the Veteran. This is not entirely attributable to his service-connected thoracolumbar spine and radiculopathy disabilities. Indeed, increasing stability to prevent falls caused by nonservice-connected ankle/foot disabilities has been mentioned. How much assistive devices are needed due to service-connected disabilities versus nonservice-connected disabilities has never been differentiated, however. Reasonable doubt thus is resolved in the Veteran’s favor such that their use is deemed attributable entirely to his service-connected disabilities. Mittleider v. West, 11 Vet. App. 181, 182 (1998). He additionally reported being unable to walk, stand, lift, sit, bend, squat, or drive for prolonged periods due to his symptoms, particularly pain. In that regard, he stated that he could not sit for longer than an hour or walk for longer than 15 to 20 minutes. 

The Veteran is competent to relate these effects of his service-connected disabilities because they concern his personal experiences. Layno v. Brown, 6 Vet. App. 465, 469-470 (1994). No reason is found to doubt his credibility in doing so. At the VA medical examinations, his service-connected disabilities were found to impact his work primarily in ways that parallel his reports. The Veteran indeed primarily was deemed unable to stand, bend, squat, sit, or drive for prolonged periods. An inability to work in the cold also was noted. As of November 2018, he had lost two to four weeks of time from work in the past year. It ultimately was determined that he was unable to perform the physical requirements of landscaping, to include bending, lifting, pushing, pulling, and operating heavy equipment. However, it never was determined that the Veteran was unable to work in any position.

Given that the Veteran was unable to perform the physical requirements of landscaping, it follows that he also was unable to perform the requirements of other physically demanding jobs. His experience solely in such a job somewhat reduces the likelihood that he could have obtained and done acceptably in a position that was not physically demanding. However, that he was a business owner for over 30 years is notable. Successfully running a business required a valuable skill set, possibly including how to interact with clients/customers, how to manage money, as well as task management and how to schedule work. The Veteran’s college education also imparted him with valuable knowledge. It cannot be said, in sum, that he lacked any qualifications for positions that are not physically demanding. At least some of these positions would allow for frequent shifting, at least between sitting, standing, and walking with assistive devices. Many also would be inside, and therefore out of the cold. 

In conclusion, there were at least some substantially gainful occupations the Veteran was qualified for that he could have performed during the period on appeal notwithstanding his service-connected disabilities. A TDIU thus is denied. Knowing whether the Veteran had a substantially gainful occupation or simply marginal employment related to the landscaping business he turned over to his son, would be useful, but it does not alter this determination. His nonservice-connected disabilities further cannot be taken into account in making it, even though they significantly impacted his ability to work. As the aforementioned determination was based on the preponderance of the evidence, there is no reasonable doubt to resolve in the Veteran’s favor. 

 

 

Thomas H. O’Shay

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board S. Becker

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.